# EXHIBIT A

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IMMIGRATION EQUALITY, et al., <br> *Plaintiffs*, <br> v. <br> MARKWAYNE MULLIN, et al., <br> *Defendants*. | Case No. 1:26CV02921 |

**DECLARATION OF BRETT H. LASSEN**

I, Brett H. Lassen, pursuant to 28 U.S.C. § 1746, do hereby declare that the following is true and correct to the best of my understanding and belief:

1. I am the Chief of the Asylum Division in the Refugee, Asylum and International Operations Directorate (RAIO), within U.S. Citizenship and Immigration Services (USCIS), a component agency of the Department of Homeland Security (DHS). I began serving in this position permanently on March 30, 2026; prior to my permanent appointment to this position, I served as the acting Asylum Division Chief since May 18, 2025.

2. As the Asylum Division Chief, I am responsible for overseeing all aspects of the USCIS Asylum Division. My responsibilities include managing the implementation of laws, regulations, policies and procedures governing the adjudication of affirmative asylum applications by USCIS under INA § 208, 8 U.S.C. § 1158. The USCIS Asylum Division has initial jurisdiction over affirmative asylum applications filed

by aliens who are physically present in the United States, or seeking admission at a port-of-entry, and are not in removal proceedings. Immigration and Nationality Act (INA) § 208(a)(1), 8 U.S.C. § 1158(a)(1); 8 CFR § 208.2(a)(1)(i). The USCIS Asylum Division also has initial jurisdiction over applications filed by unaccompanied alien children ("UACs") regardless of whether they are in removal proceedings. INA 208(b)(3)(c), 8 U.S.C. 1158(b)(3)(C). Beyond the adjudication of affirmative asylum applications, the USCIS Asylum Division is responsible for conducting various screening determinations, including credible fear screenings pursuant to INA § 235, 8 U.S.C. § 1225 and reasonable fear screenings pursuant to 8 CFR § 208.31.

3. I make this Declaration based on my personal knowledge, upon information provided to me in my official capacity, and my review of agency records. I make this declaration based on the best of my knowledge as of this day.

4. The interim final rule (IFR) titled "Affirmative Asylum Referrals Without Interview," published at 91 Fed. Reg. 47101 on July 28, 2026, permits USCIS asylum officers (AOs) to refer certain affirmative asylum applications to the Executive Office for Immigration Review (EOIR) without first conducting an asylum interview, based on the AO's review of the record, as well as other evidence including the application itself, supporting documents, other information in the file, and background checks. The IFR applies to certain applications where, for example, the principal applicant is barred from applying for asylum due to the One-Year-Filing-Deadline (OYFD), barred from a grant of asylum, does not merit a grant as a matter of discretion, or is not eligible on the merits of the claim.

5. A stay of the IFR would imminently harm USCIS by preventing the agency from using the operational flexibilities created by the rule and requiring USCIS to continue expending scarce adjudicatory resources on interviews for cases that do not appear grantable and can be referred to EOIR based on the written record and other relevant evidence. As stated in the IFR, over the past five fiscal years, 76.9% of untimely filed asylum applications that were referred to EOIR after an interview with USCIS were referred to immigration court on the basis that the alien failed to establish an exception to the OYFD.

6. USCIS's affirmative asylum backlog is substantial and continues to impose significant operational burdens on the agency. As stated in the IFR, by the end of Fiscal Year 2025, more than 1.4 million affirmative asylum applications remained pending before USCIS. The purpose of the IFR is to improve operational efficiency and help reduce the backlog growth by allowing USCIS to avoid unnecessary interviews in cases that are appropriate for referral. In doing so, the IFR will also benefit aliens with strong or meritorious asylum claims, who otherwise may have to wait years for adjudication while agency resources are consumed by cases that do not require an interview before referral.

7. USCIS began implementing the IFR on July 28, 2026.

8. As of the date of this declaration, 2,767 cases have been considered pursuant to the IFR. All of those cases involved aliens who were subject to the one-year filing deadline (OYFD). Of those 2,767 cases, 1,349 were deemed subject to referral to EOIR under the IFR; 1,114 met an exception to the OYFD; and 304 were not subject to the IFR. In other words, USCIS is not automatically referring cases without interview.

9. As of the date of this declaration, the IFR has not been applied to cases on hold, cases involving biometrics no-shows, cases with jurisdictional issues, cases involving unaccompanied alien children, or cases involving applicants who were minors at the time of filing an asylum application.

10. Asylum offices nationwide also continue to conduct more than 1,000 affirmative asylum interviews per week. Additionally, approximately 6% of AOs nationwide are assigned to conduct remote credible and reasonable fear interviews for aliens detained at the border.

11. If the Court stays the IFR, USCIS would be required to continue its prior practice of generally scheduling and conducting asylum interviews before referring affirmative asylum applications to EOIR, even where the existing record and other relevant evidence indicate that the case is not grantable regardless of whether USCIS interviews the alien, and therefore should be referred to EOIR.

12. Conducting an affirmative asylum interview requires substantial agency resources. USCIS must schedule the interview, assign asylum officer time to prepare for the interview, conduct the interview—sometimes over multiple sessions—and evaluate the testimony and evidence gathered at the interview when making a decision. USCIS also must arrange for an interpreter in certain cases. Finally, interviews require administrative support, including scheduling, file preparation, notice generation, additional file and case tracking, and facility coordination.

13. These resources are limited. Every interview slot used for a case that could be referred to EOIR without an interview is an interview slot forfeited for another case, including cases where testimony is needed to determine eligibility or where the applicant

may have a meritorious claim. A stay would therefore immediately impair USCIS's ability to allocate its limited resources to the cases where they are most needed.

14. A stay would also delay USCIS's adjudication of meritorious affirmative asylum claims. One purpose of the IFR is to free interview capacity for cases that require testimony to determine if the application is grantable. If USCIS must continue conducting interviews in cases that can be referred based on the record, applicants with potentially meritorious claims will continue to face delayed interview scheduling and delayed adjudication. Prompt resolution of meritorious claims ensures faster access to protection, stability, potential work authorization, and family reunification.

15. Although Plaintiffs do not challenge this portion of the IFR, should the Court stay the IFR entirely, it would further prevent USCIS from implementing streamlined decision-writing procedures. The IFR removes the requirement that a referral letter include an assessment of the applicant's credibility when credibility is not the basis for referral. If the Court stays the entire IFR, as opposed to tailoring relief to fit Plaintiffs' challenge, asylum officers would continue to expend time drafting credibility assessments in cases where credibility is not material to the referral decision.

16. In my judgment, based on my role and experience, staying the IFR would impair USCIS's ability to manage the affirmative asylum caseload efficiently, would worsen delays in the affirmative asylum process, would divert limited resources from potentially meritorious cases, and would delay referral of cases that USCIS has determined are appropriate for referral to EOIR.

17. For these reasons, a stay of the IFR would imminently harm USCIS's operations and its ability to carry out its asylum adjudication responsibilities.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 15th day of September 2026 in Tampa, Florida.

BRETT H LASSEN

Digitally signed by BRETT H LASSEN
Date: 2026.09.15 16:46:10 -04'00'

Brett H. Lassen
Asylum Division Chief
Refugee, Asylum and International Operations Directorate
U.S. Citizenship and Immigration Services