BRETT SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
AUGUST FLENTJE
Deputy Director
CAROLINE McGUIRE
Acting Assistant Director
SHELBY WADE
MIA S. BONADIES
ALINA N. SALGADO
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
General Appeals and Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IMMIGRATION EQUALITY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-02921<br><br>Hon. Tanya S. Chutkan |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED CONSIDERATION OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION**

## BACKGROUND

On October 29, 2026, Plaintiffs moved this Court to expedite its consideration of their pending stay motion. Plaintiffs' request is unmoored from any legal authority, and this Court should deny it.

On August 19, 2026, Plaintiffs—four nonprofit organizations—Immigration Equality, Oasis Legal Services ("Oasis"), HIAS, and the Florence Immigrant & Refugee Rights Project ("Florence Project")—filed this lawsuit challenging the United States Citizenship and Immigration Services' ("USCIS") interim final rule, *Asylum Referrals Without Interview*, 91 Fed. Reg. 47,101 (Jul. 28, 2027) ("the Referral IFR" or "the Rule"). Dkt. No. 1, Complaint ("Compl.") ¶¶ 116–32. The Plaintiffs consist solely of organizations. They allege that the Rule violates the Administrative Procedure Act ("APA") because it became effective before DHS provided public notice and the opportunity for comment, under 5 U.S.C. § 553, *id.* ¶¶ 116–20 (Count I). Plaintiffs further claim that the Referral IFR allegedly violates the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the Immigration and Nationality Act ("INA") (Count II). *Id.* ¶¶ 121–29. Finally, Plaintiffs allege that the Rule is arbitrary and capricious. (Count III). *Id.* ¶¶ 130–32.

On August 24, 2026, Plaintiffs filed a motion to stay the effective date of the Referral IFR under 5 U.S.C. § 705, Dkt. No. 4-1. The parties completed that briefing on September 22, 2026, Dkt. Nos. 14, 16, and it remains pending with the Court. On October 29, 2026, without requesting leave from the Court, Plaintiffs filed a Motion to Expedite consideration of their August 24, 2026, stay motion. Dkt. No. 23. In their Motion to Expedite, Plaintiffs request that this Court consider their stay motion on an expedited basis because they believe the pace of referrals to immigration court without an interview will "soon accelerate." *Id.* at 1. Plaintiffs rely on the class settlement agreement in *J.O.P. v. DHS*, 2026 WL 1469149 (D. Md. May 26, 2026), which they claim "is set

to terminate" on November 27, 2026. *Id.*; *see also* Dkt. No. 24.[1] Plaintiffs assert that after the termination of this settlement agreement, USCIS will have "no obstacle" to refer the *J.O.P.* class members to immigration court without first conducting asylum interviews. Dkt. No. 23 at 1–2. Plaintiffs further claim that USCIS recently referred two asylum applicants represented by Plaintiffs—who are not *J.O.P.* class members—to immigration court without an interview. *Id.* at 2; Dkt. No. 23-1 ¶ 5.

## ARGUMENT

### I. Plaintiffs' Request is Unmoored from Legal Authority.

Plaintiffs cannot point to any legal authority to support their instant request. Their motion for expeditious consideration is neither buoyed by the Federal Rules of Civil Procedure nor is it supported by the D.C. District Court local rules.

Although entitled as a "Motion to Expedite a Ruling," Plaintiffs' motion appears to be an attempt to supplement their 705 stay briefing. Dkt. No. 23. But that approach is "generally disfavored," *Kifafi v. Hilton Hotels Retirement Plan,* 736 F.Supp.2d 64, 69 (D.D.C. 2010), and neither the D.C. Local Rules nor the Federal Rules of Civil Procedure provide an opportunity for a surreply or for further supplementation of briefing. *See* LCvR 7(a), (b), (d); FED. R. CIV. P. 7. Indeed, a "surreply may be filed. . . only to address new matters raised in a reply, to which a party would otherwise be unable to respond." *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002). "That is to say, the point of a surreply is to allow a party to respond to an opponent's new facts and arguments—not to unearth facts and arguments

[1] On November 2, 2026, Plaintiffs filed a Notice of Factual Development, acknowledging that on the day Plaintiffs filed their Motion to Expedite, the *J.O.P.* court entered a 9-day extension of the settlement agreement, until November 27, 2026. Dkt. 24 at ¶ 3. Plaintiffs noted that this short extension "does not materially change the thrust or urgency of Plaintiffs' Motion to Expedite." *Id.* at ¶ 4.

never before raised." *González–Vera v. Townley*, 83 F. Supp. 3d 306, 315 (D.D.C. 2015). Notably here, since Plaintiffs requested a 705 stay, *Plaintiffs* had the last word on that briefing. Thus, Plaintiffs do not need a surreply or further supplementation to respond to anything "new" raised by Defendants. *Id.* Plaintiffs' attempt at supplementation fares no better because they did not request leave to file it. *Longwood Village Restaurant, Ltd. v. Ashcroft*, 157 F.Supp.2d 61, 68, n. 3 (D.D.C.2001) ("Before filing a surreply, however, a party *must* move the court for leave to file.") (emphasis added). On that basis alone, the Court should not consider it. *See, e.g.*, *id.* (explaining the court denied a plaintiff's surreply in part because the plaintiff failed to seek leave from the court to file the motion).

## II. Plaintiffs Do Not Demonstrate *Any* Reason for This Court to Expedite its Ruling.

Plaintiffs identify no compelling basis to justify that the Court depart from its usual practices and expedite its consideration of the pending stay motion. Plaintiffs' purported urgency rests principally on the anticipated expiration of the *J.O.P.* settlement agreement and their claim that USCIS's recent referrals of represented asylum applicants demonstrate a new need for immediate relief. Neither contention warrants expedited consideration.

### A. The *JOP* Settlement Agreement Is Still in Effect.

Plaintiffs' request for the Court's expedited consideration of their stay motion rests significantly on the *J.O.P.* settlement agreement, which they characterize as protecting "tens of thousands of asylum applicants from referral to immigration court without an interview" until November 18, 2026. *Id.* at 1. Plaintiffs have since corrected that date, acknowledging that the *J.O.P.* court extended the agreement (for a second time) through November 27, 2026. Dkt. No. 24. The *J.O.P.* court has since extended the agreement for an additional six months, through May 27, 2027, for certain class members. *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 8:19-cv-01944-SAG,

Dkt. No. 767 (November 3, 2026 order granting class counsel's request to extend the settlement agreement for six more months for certain class members who were wrongly removed on or before November 27, 2026). Accordingly, Plaintiffs' reliance on the anticipated expiration of the agreement does not establish the urgency Plaintiffs assert.

More important than the timing of the *J.O.P.* settlement, Plaintiffs cannot predicate their asserted urgency on alleged harm to *J.O.P.* class members as they are not counsel for the *J.O.P.* class, and none of the four organizational Plaintiffs represent the class members whose interests the Plaintiffs purport to invoke. Therefore, Plaintiffs cannot rely on the legal rights or alleged injuries of nonparties. See *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party 'generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.'"). Instead, *J.O.P.* class counsel were appointed under Rule 23 to protect the interests of class members, and section V.D. of the *J.O.P.* settlement agreement itself establishes a mechanism for class counsel to raise allegations of non-compliance, *see J.O.P.*, Dkt. No. 199-2. For that reason alone, this Court should not consider *J.O.P.* litigation at all, because it has no jurisdiction to do so.

Notwithstanding that the *J.O.P.* litigation is irrelevant here; it does not otherwise support Plaintiffs' request. First, the *J.O.P.* settlement agreement will remain in effect for three weeks for all class members, and six more months after that for a subset of class members. *See J.O.P.*, Dkt. Nos. 765, 767.

Additionally, Plaintiffs have incorrectly stated the *J.O.P.* settlement protections here. The agreement does not expressly require an interview before referral. Plaintiffs' description of the settlement as protecting class members from referral without an interview, Dkt. No. 23 at 1., is plainly outside the scope of the agreement's terms. In that same vein, neither the INA nor the

governing regulations independently require USCIS to conduct an interview before referring an affirmative asylum application to an immigration judge. *See* 8 U.S.C. §1158(b)(1)(A), (d)(1), (d)(5)(B); 8 C.F.R. §§ 208.10-208.14. Rather, the INA designates general authority to DHS to "establish a procedure for the consideration of asylum applications." *See* 8 U.S.C. § 1158(b)(1)(A), (d)(1), (d)(5)(B). USCIS's prior practice of interviewing affirmative asylum applicants before adjudicating their applications was an agency practice, not a statutory or regulatory mandate. 91 Fed. Reg. 47, 102. Thus, even absent the *J.O.P.* settlement agreement (which is not within the scope of clients that Plaintiff organizations represent), the governing statutes and regulations would not require USCIS to interview every affirmative asylum applicant before referral to an immigration judge.

**B. Plaintiffs Cannot Demonstrate Any New Irreparable Harm Because Two Clients Have Been Referred to Immigration Court.**

The organizational Plaintiffs further assert that they—as well as their asylum-applicant clients— "face irreparable harm" from Defendants' implementation of the Referral IFR. Dkt. No. 23 at 1, 2. In their motion, Plaintiffs now contend an expedited ruling on their stay motion is necessary because USCIS referred two of their clients to immigration court without an interview, Dkt. No. 23-1, Decl. of Rachel Kafele, at ¶ 5, "confirming that USCIS is, in fact, invoking the rule." Dkt. No. 23 at 2.

Plaintiffs in this matter are proceeding on an *organizational* standing theory, not a theory of individualized harm on behalf of their clients. *See* Dkt. No. 4-1 at 27–33 (arguing that the Referral IFR will "'interfere with' Plaintiffs' core services by impairing their 'ability… to provide

essential services to their clients' and to take on new clients.").[2] On Plaintiffs' own standing theory, they need to demonstrate irreparable harm by showing that "'the actions taken by the defendant have perceptibly impaired the organization's programs' and those actions 'directly conflict with the organization's mission.'" *Id.* at 27 (citing *League of Women Voters v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016)). Plaintiff Oasis has not demonstrated that they do not have the staff to represent these *two* clients in immigration court, or that representation of these two clients would cause them to restructure their representation model. As Plaintiff Oasis previously stated, they do "represent a small caseload of clients in Immigration Court in front of EOIR." Dkt. No. 4-3 (Rachel Kafele Decl. (Aug. 21, 2026)) at ¶ 5. Plaintiff Oasis further testified that they have one attorney dedicated to representing clients in immigration court, and three other staff attorneys who split their time between both affirmative and defensive asylum cases. *Id.* at ¶ 27. As such, they have not demonstrated that these two referrals under the Rule either establishes or supports their organizational standing theory.

Further, Plaintiffs provide scant details about the two clients in their declaration, stating only that they received notices referring their asylum applications to immigration court without an interview. Dkt. No. 23-1 at ¶ 5. As Defendants highlighted in their stay opposition, applicants may have their asylum application referred to the immigration court without an interview for various reasons. Dkt. No. 14 at 17–18. For example, asylum applicants who filed outside the one-year filing deadline or who are independently barred from applying for or receiving asylum, may

[2] Crucially, Plaintiffs would be unable to pursue standing on behalf of their individual clients in light of the jurisdictional roadblocks. For example, any challenge to USCIS's standalone referral would not meet the APA requirement for final agency action. *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313 (9th Cir. 2010). And individual asylum challenges must be channeled to immigration removal proceedings. *See* 8 U.S.C. § 1252.

receive a referral notice to immigration court, without an interview. *Id*. Without more information, causation is tenuous here: Plaintiffs' two clients may have been referred to immigration court anyway, just at a later point in time. In other words, the Referral IFR on its own does not change *who* USCIS refers to immigration court, instead, it changes *when* USCIS refers them.

Accordingly, Plaintiffs' statement that two of their clients have been referred to immigration court—without more—does not establish the basis for the relief requested here, an expedited ruling on their 705 motion. Plaintiffs have not demonstrated that this "new" situation has created a sense of urgency that requires the Court to consider Plaintiffs' Stay Motion on an expedited basis.

### C. Plaintiffs' Other Arguments Are Not New, And Have Already Been Addressed in Both Plaintiffs' and Defendants' Stay Briefing.

Plaintiffs list several other points in their Motion to Expedite that the parties have already addressed in their stay briefing. Dkt. No. 23 at 2–3. For example, Plaintiffs reiterate arguments about the setting in which they represent their clients, unaccompanied minors, and pretermission. *Id*. Defendants have already responded to these arguments in their stay briefing, which is before the Court. *See* Dkt. No. 14 at 35, 38, 39, 44–49. As the parties have already briefed these arguments, they are not new grounds that support Plaintiffs' instant request, and should not be considered by the Court in ruling on this instant Motion.

## CONCLUSION

For these reasons, this Court should deny the Plaintiffs' motion for expedited consideration of their stay motion, Dkt. 4-1.

DATED: November 6, 2026

Respectfully Submitted,

BRETT SHUMATE
*Assistant Attorney General*
Civil Division

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST FLENTJE
*Deputy Director*

CAROLINE McGUIRE
*Acting Assistant Director*

SHELBY WADE
MIA S. BONADIES

*Trial Attorneys*

/*s/ Alina N. Salgado*
ALINA N. SALGADO
Trial Attorney
GA Bar #689323
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Benjamin Franklin Station
Washington. D.C. 20044